IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| Hasnain Hashmi,<br>    Plaintiff,<br><br>v.<br><br>Robert Pascasio, individually,<br>Julie Jones, individually,<br>Rosa Schreiber, individually,<br>Brandi Gloria, individually,<br>Elizabeth Eureste, individually,<br>James Rannefeld, individually,<br>Anita Aguilar, individually,<br>Priscilla Aguirre, individually, &<br>Concho County Hospital District,<br>    Defendants. | Case No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

This case involves a former public employee, Hasnain Hashmi (Plaintiff), being retaliated against by his former employer, the Concho County Hospital District (Defendant CCHD). Plaintiff was thereafter terminated in retaliation by his supervisor, interim Chief Executive Officer Robert Pascasio (Defendant Pascasio). The Board of Directors (the Board) of Defendant CCHD sat idly by and allowed this to happen.

**PARTIES**

1. Plaintiff is a former employee of Defendant CCHD.

2. Defendant Pascasio was the interim Chief Executive Officer of Defendant CCHD at all relevant times.

3. Defendant CCHD is a hospital district under the laws of the State of Texas, created pursuant to Special District Local Laws Code, Chapter 1016.

4. At all relevant times, Defendant CCHD was overseen by the Board, consisting of Julie Jones (Defendant Jones), Anita Aguilar (Defendant Aguilar), Elizabeth Eureste (Defendant Eureste), James Rannefeld (Defendant Rannefeld), Rosa Schreiber (Defendant Schreiber), Priscilla Aguirre (Defendant Aguirre), and Brandi Gloria (Defendant Gloria).

## JURISDICTION

5. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has subject matter jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper in accordance with 28 U.S.C. § 1391(b), as Defendants reside in this venue and a substantial part of the events giving rise to the claims occurred in this venue.

## CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## GENERALLY APPLICABLE FACTS

9. Plaintiff began employment with Defendant CCHD in approximately December 2022.

10. Plaintiff was terminated on approximately April 17, 2025.

11. During the entirety of his employment, Plaintiff's position was the Pharmacy Director.

12. In his position as Pharmacy Director, Plaintiff was the head pharmacist for Defendant CCHD, responsible for overseeing all pharmacy operations of Defendant CCHD.

13. At the time of his termination, Plaintiff's supervisor was Defendant Pascasio, the interim Chief Executive Officer of Defendant CCHD.

14. Defendant Pascasio was hired by and is under the supervision of the Board, consisting of Defendant Jones, Defendant Aguilar, Defendant Eureste, Defendant Rannefeld, Defendant Schreiber, Defendant Aguirre, and Defendant Gloria.

15. On January 5, 2025, Plaintiff was extremely ill.

16. Plaintiff called Defendant Pascasio to tell him that Plaintiff needed to stay home because of the illness, i.e., Plaintiff requested sick leave that day.

17. Defendant Pascasio became upset and ordered Plaintiff to come to work even if he was sick since he was the only pharmacist available to work and thereby the only person to open the pharmacy.

18. Plaintiff reluctantly obliged and opened the pharmacy as instructed.

19. When Plaintiff arrived at work, Defendant Pascasio became even more upset when he actually saw how sick Plaintiff was. At this point, Defendant Pascasio said that Plaintiff was putting patient safety at risk by being at work while being so sick. Defendant Pascasio did not want to admit that it was he that ordered Plaintiff to come to work. The more Defendant Pascasio and Plaintiff discussed the situation, Defendant Pascasio's tone became very aggressive, rude, and abusive towards Plaintiff. The verbal attack against Plaintiff in Defendant Pascasio's office was so loud that witnesses later told Plaintiff they could hear Defendant Pascasio and his attack on Plaintiff while they were standing at the other end of the hall, near the nurses station.

20. Shortly after Defendant Pascasio finished yelling at Plaintiff, Plaintiff felt that he had a right and an obligation to report Defendant Pascasio's inappropriate behavior towards Plaintiff. Therefore, Plaintiff immediately reported to the hospital's Human Resources. Plaintiff typed up the complaint and submitted it to Human Resources. As the days passed after Plaintiff filed the Human Resources complaint against Defendant Pascasio, Defendant Pascasio became more belligerent against Plaintiff.

21. No matter what Plaintiff was trying to accomplish for the hospital doing his work as the pharmacist in charge, Defendant Pascasio would have an angry and negative attitude towards

Plaintiff. Defendant Pascasio continued to subject Plaintiff to an even higher level of scrutiny and verbal harassment. This hostile attitude was displayed at every encounter Plaintiff had with Defendant Pascasio, even when Plaintiff was trying to report on the many medication errors that he found when doing his work reviewing all orders in the hospital, as described in the next paragraph.

22. During this time, Plaintiff learned about a series of medication errors due to the way prescriptions were being documented and administered. Specifically:

    a. Plaintiff discovered that medication errors were increasing, with the increase linked to a new policy that permitted nursing staff to enter doctors' verbal orders—as opposed to written orders—directly into the hospital's electronic system to be filled by the pharmacy.

    b. While written orders would eventually follow, such orders were not being provided to the pharmacy in a timely manner such that Plaintiff discovered multiple instances of medication errors that could have been fatal to patients. These errors included incorrect administration of federal controlled substances.

    c. Administering incorrect controlled substances is prohibited by federal law pursuant to 21 U.S.C. § 841(a).

    d. Such a practice of relying on verbal orders—which were entered incorrectly and thus could not be authenticated—was also prohibited by federal regulation for hospitals who receive Medicare and Medicaid reimbursement, such as Defendant CCHD, pursuant to 42 C.F.R. § 482.24(c)(2).

23. Plaintiff raised the issue (medication errors and legal violations as described in the prior paragraph) to Defendant Pascasio. Defendant Pascasio called Plaintiff a liar and said Plaintiff did not know what he was talking about. Later, at a board meeting on February 25, 2025,

when Plaintiff was trying to present to the board members evidence of the errors, some of which could have led to fatalities, Plaintiff was cut off and contradicted by Defendant Pascasio. Plaintiff had wanted to explain in depth what the nurses were doing and continued to do even when Plaintiff told them about the errors.

24. Shortly after this board meeting, Plaintiff had a planned 4-week trip overseas to help his family. Upon his arrival back to the United States and to work, Plaintiff was summoned to Defendant Pascasio's office. This was on April 17, 2025. During the meeting, Plaintiff was told that he was being fired without any reason.

## CAUSES OF ACTION

25. Plaintiff hereby incorporates all paragraphs above and below into all causes of action.

<u>Count 1: Defendant CCHD (Interference, Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq)</u>

26. On January 5, 2025, Plaintiff was an employee of Defendant CCHD.

27. On January 5, 2025, Plaintiff was eligible to take leave pursuant to the Family and Medical Leave Act.

28. On January 5, 2025, Defendant CCHD was an employer subject to the requirements of the Family and Medical Leave Act.

29. On January 5, 2025, Plaintiff sought leave from work due to being extremely sick. As Plaintiff's request for a sick day was not foreseeable, Plaintiff provided Defendant CCHD notice as soon as was practicable under the circumstances pursuant to 29 C.F.R. § 825.303(a).

30. Through the actions of Defendant Pascasio, Defendant CCHD interfered with, restrained, and/or denied Plaintiff his right to take a sick day. Defendant CCHD became extremely angry and verbally abusive because Plaintiff was seeking to take a sick day, and Defendant CCHD ordered Plaintiff into work knowing he was sick.

31. Through such conduct, Defendant CCHD interfered with Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq, and specifically 29 U.S.C. 2615(a)(1).

Count 2: Defendant CCHD (Retaliation, Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq)

32. On January 5, 2025, Plaintiff was an employee of Defendant CCHD.

33. On January 5, 2025, Plaintiff was eligible to take leave pursuant to the Family and Medical Leave Act.

34. On January 5, 2025, Defendant CCHD was an employer subject to the requirements of the Family and Medical Leave Act.

35. After his request for a sick day was denied on January 5, 2025, Plaintiff reported to work as ordered. Once Defendant Pascasio saw Plaintiff and how sick he truly was, Defendant Pascasio became even more upset than he had previously been. Defendant Pascasio chastised Plaintiff for coming to work, despite the fact that Defendant Pascasio had ordered Plaintiff into work over Plaintiff's objection, and Defendant Pascasio was verbally abusive towards Plaintiff.

36. On January 5, 2025, or shortly thereafter, Plaintiff opposed Defendant Pascasio's abusive behavior by submitting a Human Resources complaint about Defendant Pascasio.

37. After Plaintiff submitted the Human Resources complaint, Defendant Pascasio became more belligerent against Plaintiff. No matter what Plaintiff was trying to accomplish for the hospital doing his work as the pharmacist in charge, Defendant Pascasio would have an angry and negative attitude towards Plaintiff. Defendant Pascasio continued to subject Plaintiff to an even higher level of scrutiny and verbal harassment. This hostile attitude was displayed at every encounter Plaintiff had with Defendant Pascasio, even when Plaintiff was trying to report on the many medication errors that he found when doing his work

6

reviewing all orders in the hospital. Defendant Pascasio's retaliation against Plaintiff culminated with Plaintiff's termination on or about April 17, 2025.

38. Through such conduct, Defendant CCHD retaliated against Plaintiff for exercising his rights and opposing unlawful practices under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq, and specifically 29 U.S.C. § 2615(a)(2).

Count 3: Defendant CCHD (Disability Harassment, Rehabilitation Act, 29 U.S.C. §§ 701 et seq)

39. Defendant CCHD is a recipient of federal funding, including but not limited to Medicare and Medicaid reimbursement.

40. On January 5, 2025, Plaintiff suffered from a disability, specifically an illness that substantially limited one or more of his major life activities, including his ability to care for himself, perform manual tasks, stand, concentrate, think, communicate and/or work.

41. Defendant CCHD, through the actions of its agent Defendant Pascasio, harassed Plaintiff by initially not allowing him to take a sick day and being verbally abusive to him for even asking, and then by berating him after he reported to work as ordered.

42. Such harassment affected a term, condition, or privilege of Plaintiff's employment, as the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.

43. Defendant CCHD knew or should have known of the harassment, as Plaintiff's supervisor Defendant Pascasio was the person engaging in the harassment.

44. The harassment was solely because of, i.e., solely by reason of, Plaintiff's disability.

45. Through such conduct, Defendant CCHD harassed Plaintiff, i.e., subjected him to a hostile work environment, in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq, and specifically 29 U.S.C. § 794(a).

Count 4: Defendant CCHD (Retaliation, Rehabilitation Act, 29 U.S.C. §§ 701 et seq)

46. Defendant CCHD is a recipient of federal funding, including but not limited to Medicare and Medicaid reimbursement.

47. On January 5, 2025, Plaintiff suffered from a disability, specifically an illness that substantially limited one or more of his major life activities, including his ability to care for himself, perform manual tasks, stand, concentrate, think, communicate and/or work.

48. On January 5, 2025, or shortly thereafter, Plaintiff opposed Defendant Pascasio's abusive behavior by submitting a Human Resources complaint about Defendant Pascasio.

49. After Plaintiff submitted the Human Resources complaint, Defendant Pascasio became more belligerent against Plaintiff. No matter what Plaintiff was trying to accomplish for the hospital doing his work as the pharmacist in charge, Defendant Pascasio would have an angry and negative attitude towards Plaintiff. Defendant Pascasio continued to subject Plaintiff to an even higher level of scrutiny and verbal harassment. This hostile attitude was displayed at every encounter Plaintiff had with Defendant Pascasio, even when Plaintiff was trying to report on the many medication errors that he found when doing his work reviewing all orders in the hospital. Defendant Pascasio's retaliation against Plaintiff culminated with Plaintiff's termination on or about April 17, 2025.

50. Through such conduct, Defendant CCHD retaliated against Plaintiff, i.e., discriminated against, coerced, intimidated, threatened, and/or interfered with Plaintiff, for exercising his rights and opposing unlawful practices under the Rehabilitation Act, in violation of 29 U.S.C. § 794a (incorporating Title VI, including 42 U.S.C. § 2000d-1) and 45 C.F.R. § 84.71.

Count 5: Defendant Pascasio (First Amendment Retaliation, 42 U.S.C. § 1983).

51. Plaintiff's termination on or about April 17, 2025, was an adverse employment action.

52. Plaintiff's report of unsafe and illegal practices at the board meeting on or about February 25, 2025, was speech about a matter of public concern. The public has a legitimate interest in knowing of systemic errors and legal violations in providing medication at a public hospital.

53. Plaintiff's report of unsafe and illegal practices at the board meeting on or about February 25, 2025, was speech made as a citizen, meaning any citizen would have, under the circumstances, felt compelled to report the unsafe and illegal practices. Plaintiff's speech was not made during the course of performing his duties, as evidenced by it being made in a public forum (Board meeting) to individuals who did not supervise him, i.e., to someone other than Defendant Pascasio. The purpose of publicly speaking to the Board was because Plaintiff's non-public speech as an employee had been ineffective due to Defendant Pascasio's conduct.

54. Plaintiff's interest in the speech outweighed any government interest in the efficient provision of public services.

55. Plaintiff's report of unsafe and illegal practices at the board meeting on or about February 25, 2025, precipitated his termination on or about April 17, 2025.

56. At all relevant times, Defendant Pascasio was acting under color of state law as an employee of Defendant CCHD.

57. At all relevant times, Defendant Pascasio's conduct was not objectively reasonable in light of the clearly established law in effect at the time of his conduct.

58. Defendant Pascasio's actions amounted to employment retaliation related to speech. Through such actions, Defendant Pascasio violated Plaintiff's First Amendment rights, as enforced through 42 U.S.C. § 1983.

Count 6: Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria (Supervisory Liability, 42 U.S.C. § 1983)

59. At all relevant times, the Board consisted of Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria.

60. Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria supervised Plaintiff's supervisor, Defendant Pascasio.

61. Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria learned of Plaintiff's termination by Defendant Pascasio no later than April 22, 2025.

62. Defendant Pascasio's actions were a known or obvious deprivation of Plaintiff's constitutional rights. However, Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria engaged in deliberate indifference towards Plaintiff's constitutional rights by permitting Defendant Pascasio to violate Plaintiff's constitutional rights.

63. At all relevant times, Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria were acting under color of state law as the Board of Defendant CCHD.

64. At all relevant times, the conduct of Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria was not objectively reasonable in light of the clearly established law in effect at the time of their conduct.

65. Through their actions, Defendants Jones, Aguilar, Eureste, Rannefeld, Schreiber, Aguirre, and Gloria violated Plaintiff's constitutional rights through a subordinate, in violation of 42 U.S.C. § 1983.

Count 7: Defendant CCHD (Retaliation, Texas Government Code Chapter 554).

66. On or about April 17, 2025, Defendant CCHD terminated Plaintiff's employment.

67. Defendant CCHD's decision to terminate Plaintiff was in retaliation for Plaintiff's good faith report of a violation of law to an appropriate law enforcement authority, as defined in

Government Code § 554.002(b). More specifically, the Board is a part of Defendant CCHD, which Plaintiff in good faith believed to have the power to regulate or enforce the violations Plaintiff reported.

68. Through such actions, Defendant CCHD violated the Texas Whistleblower Act, codified at Government Code Chapter 554.

## DAMAGES

69. Defendants caused Plaintiff to incur compensatory damages, which Plaintiff hereby requests as detailed below:

    a. Lost earnings in the past and in the future;

    b. Loss of earning capacity in the past and in the future;

    c. Mental or emotional pain or anguish (sometimes also referred to as emotional distress) in the past and in the future;

    d. Inconvenience in the past and in the future; and

    e. Injury to reputation in the past and in the future.

70. Plaintiff requests exemplary (punitive) damages against the individual Defendants because their actions were taken with reckless or callous indifference to Plaintiff's federally protected rights.

71. Plaintiff also seeks nominal damages of $1.

## ATTORNEY FEES & COSTS

72. Plaintiff is entitled to and requests an award of attorney fees and litigation costs (including expert witness fees) pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), 29 U.S.C. § 2617(a)(3), and Texas Government Code § 554.003(a).

## JURY DEMAND

73. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial.

**PRAYER FOR RELIEF**

74. Plaintiff hereby requests a judgment against Defendants for the following:

    a. All damages detailed above;

    b. Attorney fees and litigation costs;

    c. Prejudgment and postjudgment interest to the fullest extent allowed by law; and

    d. All other relief which may be just and proper under the circumstances.


Respectfully submitted for Plaintiff,


/s/Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd, Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
ross@cronauerlaw.com

-and-

Scott Templeton
Templeton Law Firm
905 S. Abe St
San Angelo, TX 76903
Phone: (325) 482-9120
Fax: (325) 482-9123